Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

United States District Court
Southern District of New York

7:20-cv-00875

| | |
|---|---|
| Robert Bergeron, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Grindr Inc., | |
| Defendant | |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.    Grindr Inc. ("defendant") is self-described as "the world's largest social networking app for gay, bi, trans, and queer people."

2.    Defendant has a unique role as a private company which has created a place where users can feel comfortable with their sexual orientation without fear of discrimination or violence.

3.    However, according to a recent report from the Norwegian Consumer Council ("Forbrukerrådet"), defendant has abused that trust by selling their users' information to the highest bidder without obtaining consent of users or telling them who those entities are.[1]

---

[1]    Norwegian Consumer Council, "Out of Control: How Consumers Are Exploited by the Online Advertising Industry," January 14, 2020; Natasha Singer and Aaron Krolik, "Grindr and OkCupid Spread Personal Details, Study Says," New York Times, January 13, 2020.

I.      Defendant's Collection and Sale of User Data

4.      To monetize its app, defendant partners with a Supply-Side Platform (SSP) to install software development kits ("SDK") on a user's app and phone.

5.      Defendant's app includes SDKs from multiple advertising technology ("AdTech") companies, most significantly MoPub, owned and operated by Twitter.

6.      Once the app is opened, the SDK begins to gather data from a user's phone.

7.      MoPub links this user data with data about the user from other sources, such that a person's real identity can be determined.

8.      MoPub packages this data and gives it to advertisers (demand-side platforms DSPs).

9.      The DSPs add the data supplied by MoPub to their own profile of the user.

10.     The DSPs engage in real-time bidding (RTB) and the winner displays ads to the user.

II.     Grindr fails to Allow Actual Consent

11.     Like almost all applications, the use of defendant's app begins with a "consent" form and privacy policy.

12.     Plaintiff and other users, being members of groups which have been discriminated against, have no other option in the marketplace than using Grindr since real competitors do not exist.

13.      Grindr's privacy policy only informs users of one of a dozen advertising partners, MoPub, and directs them to independently review only MoPub's privacy policy.

14.     Defendant instructs its users to read the privacy policies of MoPub's more than 160 partners prior to indicating their consent.

15.     It is physically impossible to read all of these privacy policies prior to indicating consent because defendant's app will close automatically within that time period, making

compliance impossible.

16.    Plaintiff and users are unable to consent and make an informed choice about using defendant's app and are not informed defendant sells its most private and sensitive information.

17.    The revelations of the Norwegian Consumer Council prompted Twitter to suspend defendant's access to MoPub based on "the sufficiency of Grindr's consent mechanism."[2]

III.    Android Users of Grindr are Disadvantaged due to Privacy Settings

18.    Unlike on Apple iPhone devices, the settings to "opt out of interest based ads" on Google Android phones are difficult to engage and locate.

19.    According to a 2016 report, "less than 17 % of consumers had actually used the settings, although 30 % erroneously thought that they had opted out."[3]

20.    Settings on Android allow apps to continue to use the Advertising ID for other purposes when a user affirmatively opts out of personalized advertising.

21.    On Apple devices, this option is unavailable to apps.

22.    On Android devices, the onus is on the app developer to respect the choice of users to opt-out of personalizing advertisements.

23.    Defendant does not respect the choices of users who opt-out of sharing such details through its own actions or through facilitating the actions of its advertising partners.

24.    The technical consultant engaged by the Norwegian Consumer Council determined that in many instances, "the use of the system-level opt out settings had very limited effects on the sharing of personal data."

25.    Users who opt-out of personalized advertising or who reset their advertising ID are

---

[2] Audrey Conklin, Twitter cracks down on Grindr ads amid privacy concerns, January 16, 2020, Fox Business News.
[3] Id.

not anonymized because other identifiers of them are still being shared with third parties, which they have not consented to.

IV. Plaintiff and Class Members had Expectation of Privacy in their Information

26.     Plaintiff's personal and sensitive information was disclosed and auctioned to third parties without consent.

27.     This data included "chat message text, chat message images, e-mail address, display name, "About Me", age, height, weight, body type, position, ethnicity, relationship status, "My Tribes", "I'm Looking For", gender, pronouns, HIV status, last tested date, profile picture, linked Facebook data, linked Twitter data, linked Instagram data, location data, IP address, and device ID, such as Google Advertising ID (Attachment 10: "Grindr Response to the Access Request")…Testing showed that in addition to this data, the Grindr also shared device information, app name and keywords."[4]

28.     Because defendant's service is targeted towards groups which have been victims of hate crimes and discrimination, the non-disclosure of this practice to plaintiff and class members shocks the conscience.

29.     Plaintiff and class members have a reasonable expectation of privacy in their personal chat messages with other users and the other items identified.

<u>Jurisdiction and Venue</u>

30.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

31.     Under CAFA, district courts have "original federal jurisdiction over class actions

---

[4] "Out of Control."

4

involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

32.    Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

33.    This is a reasonable assumption because the service is used across the country and has been for several years.

34.    Plaintiff is a citizen of New York.

35.    Defendant is a Delaware corporation with a principal place of business in West Hollywood, Los Angeles County, California and is a citizen of California.

36.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to provide and/or supply and provides and/or supplies services and/or goods within New York.

37.    Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

38.    A substantial part of events and omissions giving rise to the claims occurred in this District.

<u>Parties</u>

39.    Plaintiff is a citizen of Pleasant Valley, Dutchess County, New York.

40.    Defendant Grindr Inc. is a Delaware corporation with a principal place of business in West Hollywood, California, Los Angeles County.

41.    During the relevant statutes of limitations, plaintiff used defendant's application within this district and/or State on a device using Google's Android operating system.

42.    Plaintiff did not expect defendant would disclose his private information to unidentified third-parties without his consent, especially because it identified one of these parties.

<u>Class Allegations</u>

43.    The classes will consist of users of defendant's application on devices running Google's Android operating system who used the service under the false impression regarding disclosure of their private information without their consent in New York, the other 49 states and a nationwide class where applicable.

44.    Common questions of law or fact predominate and include whether defendant's representations and practices with respect to the disclosure of personal information was without consent of users and if plaintiff and class members are entitled to damages.

45.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive actions.

46.    Plaintiff is an adequate representative because his interests do not conflict with other members.

47.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

48.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

49.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

50.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York GBL §§ 349 & 350</u>
<u>(Consumer Protection from Deceptive Acts)</u>

51.    Plaintiff incorporates by reference all preceding paragraphs.

52.    Plaintiff and class members desired to use the service provided by defendant and expected by reasonable users of this type of service.

53.     Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

54.     Defendant collected and stored plaintiff's personal information and sold it to third-parties without their consent.

55.     Defendant represented they would disclose personally identifiable information in a manner identified in their terms of service but misrepresented material facts by failing to do so.

56.     Plaintiff and class members could not expect that defendant's application would fail to honor its promises with respect to opting out of being tracked.

57.     Plaintiff  and class members would not have used the service if the true facts had been known, suffering damages.

<u>New York Civil Rights Law § 51</u>

58.     Plaintiff incorporates by reference all preceding paragraphs.

59.     Plaintiff's personal information was obtained through obtaining unique identifiers.

60.     Though defendant may or has claimed the information obtained from plaintiff is anonymized, this is a half-truth.

61.     According to the Norwegian Report, "many of these pseudonymous identifiers can be linked, synchronized or matched across companies in order to tie them to individual consumers."[5]

62.     Once this information is obtained, it is used for purposes of trade by defendant and its advertising partners.

<u>Trespass to Chattels</u>

63.     Plaintiff incorporates by reference all preceding paragraphs.

---

[5] Id.

64.     Defendant's dissemination of the personally identifying information of plaintiff caused his device to operate at a reduced speed and functionality due to the thousands of operations which occur at the time defendant's partners bid for showing display ads to plaintiff.

<u>Intrusion Upon Seclusion (for states recognizing this cause of action)</u>

65.     Plaintiff incorporates by reference all preceding paragraphs.

66.     The personal identifying information obtained by defendant and distributed without consent of plaintiff and class members was private information which was intruded upon.

67.     Defendant's form of intrusion was highly offensive in that users were not informed of the extent of this distribution of their information and it would have been practically and was not possible for plaintiff and class members to review all policies of all defendant's partners.

<u>Breach of Contract</u>

68.     Plaintiff re-alleges the paragraphs above.

69.     Plaintiff and class members entered into a contract with Defendant for the use of the application and plaintiff reasonably believed his personal information would be disclosed in the manner indicated by defendant.

70.     Plaintiff and class members were given assurances in the form of defendant's code of conduct, terms of services and/or privacy policies, that industry-standard, reasonable and practical measures would be taken, at all steps so their private data would only be disclosed to those parties indicated by defendant and consented to by users.

71.     The terms of defendant's privacy policy, code of conduct and terms of services, are part of the contract.

72.     Plaintiff and class members performed substantially all required of them under their contract with defendant or were excused from doing so.

73.     Defendant failed to perform its obligations under the contract, including by failing to provide adequate privacy and confidentiality safeguards for Plaintiff's and class member's personally identifying, private information.

74.     As a direct and proximate result of defendant's breach of contract, Plaintiff and Class members did not get what they expected.

75.     Plaintiff and Class members were damaged in an amount at least equal to the difference in value between that which was promised and Defendant's deficient performance.

76.     As a result of Defendant's breach of contract, Plaintiff and Class members suffered actual damages resulting from the exposure of their personal information to advertising third parties who are able to de-anonymize their information to match it with their identities.

77.     Plaintiff and Class members have been injured by Defendant's breach of contract and are entitled to damages and/or restitution in an amount to be proven at trial.

Negligence and Negligence Per Se

78.     Plaintiff and class members incorporate by reference all preceding paragraphs.

79.     Defendant violated N.Y. Gen. Bus. Law § 899-aa and similar laws of the other 49 states by failing to obtain the consent of plaintiff and class members regarding the extent of access provided to unidentified third-parties for commercial use.

80.     The harm which occurred due to disclosure of the personally identifiable information without consent to unauthorized entities is the type of harm these laws are intended to protect.

81.     Specifically, this is the harm of the unauthorized access or disclosure of personal information due to a failure to adequately structure data sharing protocols.

82.     Defendant had a duty of reasonable care to safeguard the privacy, confidentiality, and security of Plaintiff's and Class members' personal information and comply with the terms of

its own privacy and security policy.

83.    As a direct and proximate result of Defendant breach of their duty of care, Plaintiff and class members suffered injury.

<u>Unjust Enrichment</u>

84.    Plaintiff incorporates by reference all preceding paragraphs.

85.    Defendant obtained benefits and monies because the service was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, restitution and disgorgement for members of the State Subclasses pursuant to the applicable laws of their States;

4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   January 31, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

7:20-cv-00875
United States District Court
Southern District of New York

Robert Bergeron, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Grindr Inc.,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: January 31, 2020

/s/ Spencer Sheehan
Spencer Sheehan