United States District Court
Southern District of New York                    7:20-cv-00875-KMK

Robert Bergeron, individually and on behalf
of all others similarly situated,

                    Plaintiffs,

          - against -

Grindr Inc.,

                    Defendant

Plaintiff's Memorandum of Law in Opposition
to Defendant's Motion to Compel Arbitration or, Alternatively,
Motion to Dismiss the Complaint

SHEEHAN & ASSOCIATES
Christopher Patalano
60 Cuttermill Rd, Ste 409
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*cpatalano@spencersheehan.com*

# Table of Contents

Table of Authorities ................................................................................................. iii

Introduction ................................................................................................................1

Argument ...................................................................................................................1

I.       Applicable Standard to Compel Arbitration ...................................................1

         A.       The Purported Arbitration Agreement Was Not Clear and Conspicuous
                  ................................................................................................................ 2

II.      Legal Standard on Motion to Dismiss .............................................................6

         A.       Factual Allegations Should Be Accepted as True ................................ 6

III.     Plaintiff's GBL §§ 349 and 350 Claims Are Well Founded............................7

         A.       Plaintiff Suffered an Actual Injury ...................................................... 7

IV.      Plaintiff Properly Pled a Claim for Negligence. ..............................................8

V.       Plaintiff Properly Pled a Claim for Breach of Contract...................................9

VI.      Plaintiff Properly Alleges a Statutory Privacy Claim.....................................10

VII.     Plaintiff Properly Alleges a Trespass to Chattel Claim ..................................11

VIII.    Plaintiff's Unjust Enrichment Claim Is Not Duplicative................................11

IX.      Plaintiff Is Entitled to Punitive Damages .......................................................12

X.       Plaintiff Has Standing to Seek Injunctive Relief ...........................................13

Conclusion ................................................................................................................14

# Table of Authorities

**Cases**

*Applied Energetics, Inc. v. Newoak Capital Mkts.*, LLC,
  645 F.3d 522 (2d Cir. 2011) ...................................................................................................1

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................................6

*Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*,
  290 F.3d 476 (2d Cir. 2002) ...............................................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................................6

*Bensadoun v. Jobe-Riat*,
  316 F.3d 171 (2d Cir. 2003) ...............................................................................................1

*Berkson v. Gogo LLC*,
  97 F. Supp. 3d 359 (E.D.N.Y. 2015)................................................................................2, 4

*Burton v. Iyogi, Inc.*,
  No. 13-cv-6926, 2015 WL 4385665 (S.D.N.Y. Mar. 16, 2015)...........................................12

*Caronia v. Philip Morris USA, Inc.*,
  715 F.3d 417 (2d Cir. 2013) ...............................................................................................8

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) ...............................................................................................2

*Cohn v. Lionel Corp.*,
  289 N.Y.S.2d 404 (1968)....................................................................................................12

*Crawford v. Franklin Credit Mgmt. Corp.*,
  758 F.3d 473 (2d Cir. 2014) ...............................................................................................7

*Cummings v. FCA US LLC*,
  401 F. Supp. 3d 288 (N.D.N.Y. 2019) ...............................................................................12

*Doe v. Columbia Univ.*,
  831 F.3d 46 (2d Cir. 2016) .................................................................................................9

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) .............................................................................................................1

*Gant v. Wallingford Bd. of Educ.*,
  69 F.3d 669 (2d Cir. 1995) .................................................................................................6

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
  561 U.S. 287 (2010) ............................................................................................1

*Hanley v. Chicago Title Ins. Co.*,
  No. 12-cv-4418, 2013 WL 3192174 (S.D.N.Y. June 24, 2013) .............................................6

*Harris v. TD Ameritrade, Inc.*,
  338 F. Supp. 3d 170 (S.D.N.Y. 2018) ..................................................................11

*Henry v. Daytop Vill., Inc.*,
  42 F.3d 89 (2d Cir.1994) .................................................................................11

*Hines v. Overstock.com, Inc.*,
  380 Fed. Appx. 22 (2d Cir. 2010) ........................................................................2

*Howell v. New York Post Co.*,
  81 NY 2d 115 (1993)........................................................................................10

*Howsam v. Dean Witter Reynolds*,
  537 U.S. 79 (2002) ...........................................................................................1

*Huang v. iTV Media, Inc.*,
  13 F. Supp. 3d 246 (E.D.N.Y. 2014) ....................................................................12

*In re Anthem, Inc. Data Breach Litig.*,
  162 F. Supp 3d 953 (N.D. Cal. 2016)......................................................................7

*JPay, Inc. v. Kobel*,
  904 F.3d 923 (11th Cir. 2018) ...........................................................................1

*Karlin v. IVF America, Inc.*,
  712 N.E.2d 662 (1999) ....................................................................................12

*Kernaghan v. Forster & Garbus, LLP*,
  2019 U.S. Dist. LEXIS 32268 (E.D.N.Y. Feb. 25, 2019) .................................................2

*Leibowitz v. Cornell Univ.*,
  584 F.3d 487 (2d Cir. 2009) ..............................................................................9

*Meyer v. Uber Techs, Inc.*,
  868 F. 3d 66 (2d Cir. 2017) .........................................................................2, 3, 4

*Nguyen v. Barnes & Noble Inc.*,
  763 F. 3d 1171 (9th Cir. 2014) ...........................................................................3

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014 ) ...........................................................................4

iv

*Nicosia v. Amazon. Com., Inc.*,
    834 F.3d 220 (2d Cir. 2015)................................................................................4, 5

*Nicosia v. Amazon.com, Inc.*,
    2017 U.S. Dist. LEXIS 133701 (E.D.N.Y. Aug. 18, 2017) ....................................2

*Noble v. Samsung Elecs. Am., Inc.*,
    682 Fed. Appx. 13 116 (3d Cir. 2017)....................................................................4

*Pellegrini v. Richmond Cnty Ambulance Serv., Inc.*,
    851 N.Y.S.2d 268 (2d Dept. 2008) .......................................................................12

*Petrosino v. Stearn's Products, Inc.*,
    No. 16-cv-07735 (S.D.N.Y. Mar. 30, 2018)...........................................................13

*Register.com, Inc. v. Verio, Inc.*,
    365 F.3d 393 (2d Cir. 2004) .................................................................................11

*Resorb Networks, Inc. v. YouNow.com*,
    30 N.Y.S.3d 506 (N.Y. Sup. Ct. 2016) ...................................................................3

*Rudolph v. Hudson Bay Co.*,
    No. 18-cv-08472 (May 7, 2019) ...........................................................................13

*Sackin v. Transperfect, Global, Inc.*,
    278 F. Supp. 3d 739 (S.D.N.Y. 2017) .................................................................8, 9

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012) ......................................................................1, 2, 3, 4

*Small v. Lorillard Tobacco Co., Inc.*,
    84 N.Y.2d 43, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999) .....................................7

*Specht v. Netscape Commc'ns Corp.*,
    306 F.3d 17 (2d Cir. 2002) .......................................................................2, 3, 4

*Starke v. Squaretrade, Inc.*,
    913 F. 3d 279 (2d Cir. 2019) ....................................................................2, 3, 4

*Weisman v. LeLandais*,
    532 F.2d 308 (2d Cir. 1976) ...................................................................................6

*Wilner v. Allstate Ins. Co.*,
    893 N.Y.S.2d 208 (2d Dept. 2010) .......................................................................13

*Winick Realty Grp. LLC v. Austin & Assocs.*,
    857 N.Y.S.2d 114 (1st Dep't 2008) .......................................................................12

*Woods v. Maytag Co.*,
   807 F. Supp.2d 112 (E.D.N.Y. 2011) ..................................................................................7

**Statutes**

GBL § 349 ................................................................................................................................7

GBL § 350 ................................................................................................................................7

NY Civil Rights law § 51 .........................................................................................................9

**Rules**

Fed. R. Civ. P.  8(e)(2) ...........................................................................................................11

### Introduction

Plaintiff submits this memorandum of law in opposition to Defendant's Memorandum of Law in Support of Motion to Compel Arbitration or to Dismiss the Complaint ("Mem.").

### Argument

## I.     Applicable Standard to Compel Arbitration

When determining whether an arbitration agreement exists in the first instance the liberal federal policy favoring arbitration agreements does not apply. *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 302 (2010) (directing courts to apply the presumption of arbitrability "only after the Court was persuaded that the parties' arbitration agreement was validly formed"); *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002) ("a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide."). "Assuming that the parties agreed to arbitrate arbitrability 'might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.'" *JPay, Inc. v. Kobel*, 904 F.3d 923, 930 (11th Cir. 2018) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995)). Thus, "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Applied Energetics, Inc. v. Newoak Capital Mkts.*, LLC, 645 F.3d 522, 526 (2d Cir. 2011).

In determining whether there is an agreement to arbitrate, the court applies a standard similar to summary judgment. *See Bensadoun v. Jobe-Riat,* 316 F.3d 171, 175 (2d Cir. 2003). The court must accept as true the underlying allegations in the complaint. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012). The Court must "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits." *See Nicosia v. Amazon.com, Inc.*, 2017 U.S. Dist.

LEXIS 133701, at *14 (E.D.N.Y. Aug. 18, 2017) ("*Nicosia III*") (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)). If a genuine issue of material fact exists concerning the existence of an agreement to arbitrate, the parties are entitled discovery and a hearing before a fact-finder. *See Nicosia III*, 2017 U.S.Dist. LEXIS 133701, at *5 (E.D.N.Y. Aug 18, 2017) (court permitted arbitration related discovery on whether parties formed agreement to arbitration).

A.     The Purported Arbitration Agreement Was Not Clear and Conspicuous

Defendant bears the burden of proving that the parties formed an agreement to arbitrate. *Hines v. Overstock.com, Inc.*, 380 Fed. Appx. 22, 24 (2d Cir. 2010) (citations omitted); *Kernaghan v. Forster & Garbus, LLP*, 2019 U.S. Dist. LEXIS 32268, at *8 (E.D.N.Y. Feb. 25, 2019).

Defendant must make a prima facie initial showing that an agreement to arbitrate existed, which shifts the burden to Plaintiff to show that factual disputes exist to "put the making of that agreement in issue." *Hines*, 380 Fed. Appx. at 24.

The threshold question here, as in any arbitration motion, is whether the parties have contractually bound themselves to an arbitration agreement. *Specht v. Netscape Commc'ns Corp.,* 306 F.3d 17, 26 (2d Cir. 2002); *Starke v. Squaretrade, Inc.,* 913 F. 3d 279, 288 (2d Cir. 2019) (citing *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 388 (E.D.N.Y. 2015). "'Mutual manifestation of assent' is the 'touchstone' of a binding contract." *Berkson*, 97 F. Supp. 3d at 388 (quoting *Specht*, 306 F.3d at 29). "Arbitration agreements are no exception to the requirement of manifestation of assent." *Specht*, 306 F.3d at 30; *Starke,* 913 F. 3d at 288-89 ("[T]o be binding, a contract requires a 'meeting of the minds' and 'a manifestation of mutual assent.'").

State law principles of contract formation apply to the arbitrability question. *Meyer v. Uber Techs, Inc.,* 868 F. 3d 66 (2d Cir. 2017). "The manifestation of mutual asset must be

2

sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Starke*, 913 F. 3d at 289 (2d Cir. 2019).

In the case of web-based contracts, courts apply an objective standard for determining whether the customer will be bound by an agreement to arbitrate. *Meyer,* 868 F.3d at 74-75. Courts will find assent and enforce an agreement to arbitrate where a *"reasonably prudent user would be on inquiry notice of the terms.*" *Id.* (citing *Schnable*, 697 F.3d at 120); *Resorb Networks, Inc. v. YouNow.com,* 30 N.Y.S.3d 506, 511 (N.Y. Sup. Ct. 2016) (noting that when evaluating a transaction occurring online, courts focus on "whether a reasonably prudent offeree would be on notice of the term at issue" and whether the terms of the agreement were "reasonably communicated to the user," because assent is mostly passive online).

Under New York law, courts look to whether the term was obvious and whether it was called to the offeree's attention. *Starke*, 913 F.3d at 289 (citing 22 N.Y. Jur. 2d Contracts § 29 ("[A] party should not be bound by clauses printed on the reverse side of a contract unless it is established that they were *properly called to his or her attention* and that he or she assented to them.")). "Whether a reasonably prudent user would be on inquiry notice turns "on the [c]larity and conspicuousness of arbitration terms . . . [I]n the context of web-based contracts . . . clarity and conspicuousness are a function of the design and content of the relevant interface." *Meyer*, 868 F.3d at 74; *Specht*, 306 F.3d at 30. *Starke,* 913 F.3d at 289; *Nguyen v. Barnes & Noble Inc.*, 763 F. 3d 1171, 1177 (9th Cir. 2014).

Courts have recognized that "[a]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he is unaware, contained in a document whose contractual nature is not obvious." *Schnabel*, 697 F.3d at 123. "Clarity and conspicuousness of arbitration terms are important in securing informed assent." *Specht*, 306

F.3d at 30. "If a party wishes to bind in writing another to an agreement to arbitrate future disputes such purpose should be accomplished in a way that each party to the arrangement will fully and clearly comprehend that the agreement to arbitrate exists and binds the parties thereto." *Id.*

The enforceability of web-based agreements to arbitrate has been the subject of analysis in numerous federal court decisions in this Circuit and others. *See, e.g.*, *Starke v. Squaretrade, Inc.*, 913 F.3d 279 (2d Cir. 2019) (refusing to compel arbitration); *Meyer v. Uber Techs, Inc.*, 868 F. 3d 66 (2d Cir. 2017) (upholding agreement to arbitrate); *Nicosia v. Amazon. Com.,* Inc., 834 F.3d 220 (2d Cir. 2015) (holding reasonable minds could differ on the reasonableness of the notice); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110 (2d Cir. 2012); *Berkson*, 97 F. Supp. 3d at 388 (denying motion to compel arbitration finding, after exhaustive review of various forms of web-based so called "wrap" agreements, that the "design and content" of Gogo's website did not demonstrate that plaintiff Berkson knew he was binding himself to such an agreement). *See also Cullinane v. Uber Techs, Inc.*, 893 F. 3d 53 (1st Cir. 2018) (finding that the terms of the agreement to arbitration were not reasonably communicated to plaintiffs); *Noble v. Samsung Elecs. Am., Inc.*, 682 Fed. Appx. 13 116 (3d Cir. 2017) (arbitration clause will only be binding when the terms are reasonably conspicuous rather than proffered unfairly or with a design to conceal or de-emphasize its provisions) *Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171 (9th Cir. 2014 ) What emerges from these cases is that ultimately, determinations as to whether to grant or deny a motion to compel remain a fact specific inquiry that requires the Court to consider the specific facts in each case to determine whether, objectively, the agreement to arbitrate was sufficiently clear and conspicuous to force a plaintiff to arbitrate a dispute where there is no evidence the

plaintiff actually knew about or agreed to arbitrate disputes. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233-234, 238 (2d Cir. 2016).

Here, Defendant does little more that assert that a user need only click a singular "PROCEED" button in order to assent to the myriad terms and conditions contained in Defendant's Terms of Service. Mem. at 4 ("In order to advance through the Grindr App's account creation process and use the Grindr App and Grindr's services, users are required to click a "PROCEED" button, which automatically triggers a digital prompt offering users a choice between accepting … or declining … the Terms of Service.").

However, this does not tell the full story. Here, Plaintiff contends that "users are unable to consent and make an informed choice about using defendant's app and are not informed defendant sells its most private and sensitive information." Compl. ¶ 16. This is because Defendant does not allow Plaintiff easy access to the terms and conditions that govern the Terms of Service. In order to fully understand the scope of the Terms of Service and privacy agreement, a user would need to navigate to the website of Defendant's advertising partner MoPub and review more than 160 privacy policies of MoPub's partners prior to indicating their consent. Compl. ¶ 13-14.

Defendant's privacy policy only informs users of one of a dozen advertising partners, MoPub, and directs the user to independently review only MoPub's privacy policy. Compl. ¶ 13. Any attempt at reviewing MoPub's privacy policy directs the user to then read the privacy policies of MoPub's more than 160 partners prior to indicating the user's consent. Compl. ¶ 14. Thus, this is not just a question of whether a user consents to Defendant's Terms of Service as defined in the app on the click-through screen. In order to fully comprehend the entire schema designed by Defendant and Defendant's partners, a user must read what amounts to hundreds, if not thousands, of pages of privacy policies.

A reasonable consumer, confronted with the Defendant's registration page, would expect that the Terms and Conditions contained therein represented the full slate of terms agreed to. However, no reasonable consumer would, or could, read all of these policies before consenting to the Terms and Conditions.

## II.    Legal Standard on Motion to Dismiss

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (quoting *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir. 1976)).

### A.    Factual Allegations Should Be Accepted as True

A court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Hanley v. Chicago Title Ins. Co.*, No. 12-cv-4418, 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013) (citing *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*"). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citations omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

For purposes of a Rule 12(b)(6) motion, facts alleged by the nonmoving party are presumed to be true and construed in the light most favorable to plaintiff. *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 479 (2d Cir. 2002). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and… determine whether they plausibly give rise to an entitlement of relief." *Woods v. Maytag Co.*, 807 F. Supp.2d 112, 118–19 (E.D.N.Y. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

### III.   Plaintiff's GBL §§ 349 and 350 Claims Are Well Founded

In order to establish a claim under GBL §§ 349 and 350, plaintiff must allege that (1) the challenged act or practice was consumer oriented; (2) it was misleading in a material way; and (3) the plaintiff suffered injury as a result of the deceptive act. *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014).

### A.   Plaintiff Suffered an Actual Injury

"Parties seeking damages under the GBL must provide proof that a material deceptive act or practice caused actual, although not necessarily pecuniary, harm." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp 3d 953, 992 (N.D. Cal. 2016) (citing *Small v. Lorillard Tobacco Co., Inc.*, 84 N.Y.2d 43, 698 N.Y.S.2d 615, 720 N.E.2d 892, 897 (1999)).

The "loss of value" of personal identifying information ("PII") has been held to constitute a legally cognizable injury under GBL § 349. *Anthem*, 162 F. Supp 3d at 995-96 Surveying the applicable holdings of several courts, a Northern District of California court held "loss of value of PII represents a cognizable form of economic injury" for claims under GBL § 349. *Id*.

Here, Plaintiff contends that "Plaintiff and users are unable to consent and make an informed choice about using [D]efendant's app and are not informed [D]efendant sells its most private and sensitive information. Compl. ¶ 16. "Plaintiff's personal and sensitive information was disclosed and auctioned to third parties without consent." Compl. ¶ 26. "Defendant does not

respect the choice of users who opt-out of sharing such details through its own actions or through facilitating the actions of its advertising partners." Compl. ¶ 23. Plaintiff's allegations establish sufficient cognizable injury related to the loss of Plaintiff's PII.

Defendant further claims that the GBL claims fail because Plaintiff "does not allege an injury distinct from the alleged deceptive business practice itself." Mem. at 15. Plaintiff's "allegations of diminution in value of her personal information are sufficient to show contract damages for pleading purposes." *Svenson v. Google, Inc.*, 2015 WL 1503429, *5 (N.D. Cal. Apr. 1, 2015). Thus, Defendant engaged in a deceptive business practice (the failure to properly notify the Plaintiff as to how his PII would be used and disseminated) and Plaintiff thereby suffered damages (the loss of value of said PII).

## IV.    Plaintiff Properly Pled a Claim for Negligence.

"Under New York law, in order to recover on a claim for negligence, a plaintiff must show (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 428 (2d Cir. 2013). The complaint here alleges a cognizable legal duty – Defendants had a duty to safeguard Plaintiff's PII. Compl. ¶ 82 ("Defendant had a duty of reasonable care to safeguard the privacy, confidentiality, and security of Plaintiff's and Class members' personal information and comply with the terms of its own privacy and security policy).

Defendant contends that "Plaintiff improperly attempts to convert a breach of contract claim into a tort claim." Mem. at 20. The seeming basis for this contention is that Defendant believes that it did not violate an independent duty. As stated above, Defendant had a duty to protect Plaintiff's sensitive PII. *Sackin v. Transperfect, Global, Inc.*, 278 F. Supp. 3d 739, 748 (S.D.N.Y. 2017) (employer had a duty to safeguard employees' PII).

Here, "Defendant had a duty of reasonable care to safeguard the privacy, confidentiality,

and security of Plaintiff's and Class members' personal information and comply with the terms of its own privacy and security policy." Compl. ¶ 82. "As a direct and proximate result of Defendant['s] breach of their duty of care, Plaintiff and class members suffered injury." Compl. ¶ 83. As discussed above, the injury thereby suffered was the loss of value of Plaintiff's PII.

## V.     Plaintiff Properly Pled a Claim for Breach of Contract.

As a threshold matter, to the extent that Defendant contends that Plaintiff's claims are "contradictory," a "plaintiff is at liberty to plead different theories, even if they are inconsistent with one another, and the court must accept each sufficiently pleaded theory at face value, without regard to its inconsistency with other parts of the complaint." *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).

Here, Plaintiff alleges, "Plaintiff and class members were given assurances in the form of defendant's code of conduct, terms of services and/or privacy policies, that industry standard, reasonable and practical measures would be taken, at all steps so their private data would only be disclosed to those parties indicated by defendant and consented to by users." Compl. ¶ 70.

Defendant is liable for a breach of implied contract. "Under New York law, a contract implied in fact may result as an inference from the facts and circumstances of the case, though not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 506-07 (2d Cir. 2009) (internal quotations omitted). "An implied contract like an express contract, requires consideration, mutual assent, legal capacity and legal subject matter." *Sackin* 278 F. Supp 3d at 750 (internal quotations and citations omitted).

Here, Defendant has created a safe space for users from a class of individuals who have been the victims of hate crimes and still face discrimination in many sectors of society and parts of the world. Compl. ¶ 2, 28. Given the sensitive nature of the data that can be collected on

Defendant's application, there is a strong presumption amongst users that that data would remain private. Compl. ¶ 27 (listing data collected by Grindr). Therefore an implied contract was created between the parties to safeguard Plaintiff's data, which was breached by Defendant.

## VI.    Plaintiff Properly Alleges a Statutory Privacy Claim

Defendant alleges that NY Civil Rights law § 51 ("Section 51") limits the scope of its protections to nonconsensual commercial appropriations of the name, portrait, or picture of a living person. This interpretation of Section 51 is too narrow, and Plaintiff states a viable claim under this Section.

Section 51 prohibits the use of a living person's name, portrait or picture for advertising or trade purposes without prior written consent. *Howell v. New York Post Co.*, 81 NY 2d 115, 123 (1993).

Defendant collects and disseminates users' data including "chat message text, chat message images, e-mail address, display name, 'About Me,' age, height, weight, body type, position, ethnicity, relationship status, 'My Tribes' 'I'm Looking For,' gender, pronouns, HIV status, last tested date, profile picture, linked Facebook data, linked Twitter data, linked Instagram data, location data, IP address, and device ID." Compl. ¶ 27 This data constitutes "unique identifiers," which "can be linked, synchronized or matched across companies in order to tie them to individual consumers." Compl. ¶¶ 59, 61.[1] The amalgamation of this data would allow advertising companies to specifically identify any user just as well as that user's "name, portrait or picture."

---

[1] Norwegian Consumer Council, "Out of Control: How Consumers Are Exploited by the Online Advertising Industry," January 14, 2020; Natasha Singer and Aaron Krolik, "Grindr and OkCupid Spread Personal Details, Study Says," New York Times, January 13, 2020.

## VII.    Plaintiff Properly Alleges a Trespass to Chattel Claim

"A trespass to a chattel may be committed by intentionally . . . using or intermeddling with a chattel in the possession of another." *Register.com, Inc. v. Verio, Inc.*, 365 F.3d 393, 404 (2d Cir. 2004). A "trespasser is liable to the possessor of the chattel only if . . . he dispossesses the other of the chattel, or the chattel is impaired as to its condition, quality, or value, or the possessor is deprived of the use of the chattel for a substantial period of time." *Harris v. TD Ameritrade, Inc.*, 338 F. Supp. 3d 170, 191 (S.D.N.Y. 2018) (citations omitted).

*Register.com* is instructive. In that case, the district court found, and circuit court affirmed, that the "use of defendant's search robots, consisting of software programs performing multiple automated successive queries, consumed a significant portion of the capacity of Register's computer systems." *Register.com*, 365 F.3d at 404. The district court further found that if defendant were "permitted to continue to access Register's computers through such robots, it was 'highly probable' that other internet service providers would devise similar programs to access Register's data, and that the system would be overtaxed and would crash." *Id*.

The allegations here are substantially similar to those in *Register.com*. The advertising and dissemination scheme perpetrated by Defendant caused Plaintiff's "device to operate at a reduced speed and functionality due to the thousands of operations which occur at the time defendant's partners bid for showing display ads to plaintiff." Compl. ¶ 64. This intrusion caused Plaintiff's cellular telephone to function at a reduced capacity and therefore constitutes a trespass to chattels.

## VIII.    Plaintiff's Unjust Enrichment Claim Is Not Duplicative

Defendant argues that the Court should dismiss Plaintiff's unjust enrichment claim because it is duplicative. Mem. at 24. However, "[u]nder Rule 8(e)(2) of the Federal Rules of Civil Procedure, a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency." *Henry v. Daytop Vill., Inc.,* 42 F.3d 89, 95 (2d Cir. 1994).

To the extent that this Court finds that Plaintiff do not state claims pursuant to the GBL, fraud, negligent representation or breach of express warranty, the Court could hold that Plaintiff's unjust enrichment claim is viable. *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 316-17 (N.D.N.Y. 2019). ("Plaintiff's claim for unjust enrichment arises outside of the scope of the Limited Warranty and is consequently not barred.").

Thus, because questions of fact remain as to all of Plaintiff's claims, dismissal of Plaintiff's unjust enrichment claim at this stage is premature. *Huang v. iTV Media, Inc.*, 13 F. Supp. 3d 246, 261 (E.D.N.Y. 2014) (declining to dismiss unjust enrichment claim as duplicative at motion to dismiss stage); *Burton v. Iyogi, Inc.*, No. 13-cv-6926, 2015 WL 4385665, at *11 (S.D.N.Y. Mar. 16, 2015) (denying motion to dismiss New York unjust enrichment claim and stating that "it is well-settled that parties may plead in the alternative"); *Cohn v. Lionel Corp.*, 289 N.Y.S.2d 404, 408 (1968) ("Undeniably, a plaintiff is entitled to advance inconsistent theories in alleging a right to recovery."); *Winick Realty Grp. LLC v. Austin & Assocs.*, 857 N.Y.S.2d 114, 115 (1st Dep't 2008) ("[S]ince plaintiff is entitled to plead inconsistent causes of action in the alternative, the quasi-contractual claims are not precluded by the pleading of a cause of action for breach of an oral agreement.").

## IX. Plaintiff Is Entitled to Punitive Damages

In New York, "among the remedies available to private plaintiffs [Under GBL § 349] are compensatory damages, limited punitive damages and attorneys' fees." *Karlin v. IVF America, Inc.*, 712 N.E.2d 662, 666 (1999). Generally, "an award of punitive damages is warranted where the conduct of the party being held liable evidence a high degree of moral culpability, or where the conduct is so flagrant as to transcend mere carelessness, or where the conduct constitutes willful or wanton negligence or recklessness." *Pellegrini v. Richmond Cnty Ambulance Serv., Inc.*, 851 N.Y.S.2d 268, 269 (2d Dept. 2008)

Intentionality is a large part of the test of whether or not punitive damages are available under the GBL. *Petrosino v. Stearn's Products, Inc.*, No. 16-cv-07735 (S.D.N.Y. Mar. 30, 2018) (finding punitive damages a potentially available remedy where defendant intentionally, and not just carelessly, marketed products as "natural" when they contained synthetic material); *Wilner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208, 218 (2d Dept. 2010) (denying motion to dismiss punitive damages because Plaintiff alleged that Defendant's acted intentionally in order to induce a particular result.).

Here, Defendant intentionally and recklessly shares Plaintiff's PII. Compl ¶ 28 ("Because defendant's service is targeted towards groups which have been victims of hate crimes and discrimination, the non-disclosure of this practice to plaintiff and class members shocks the conscience."). Given the sensitive nature of this PII, in addition to the protected and often targeted class of people to whom the PII belongs, Defendant's conscience-shocking disregard for its users' privacy opens the door for Plaintiff and class members to receive punitive damages.

## X.     Plaintiff Has Standing to Seek Injunctive Relief

Defendant contends that Plaintiff does not have standing to seek injunctive relief because Plaintiff cannot show a likelihood that he will be injured again by the challenged conduct. Mem. at 24. However, Plaintiff remains at risk of future harm and therefore has standing. Plaintiff has standing to pursue injunctive relief because Defendant and Defendant's partners are already and continually in possession of Plaintiff's data and PII and have failed to safeguard it.

"A plaintiff has Article III standing if she plausibly alleges future injury, provided that the threatened injury is certainly impending or there is a substantial risk that the harm will occur." *Rudolph v. Hudson Bay Co.*, No. 18-cv-08472 (May 7, 2019). Here "Plaintiff's personal and sensitive information was disclosed and auctioned to third parties without consent." Compl. ¶ 26. Plaintiff has lost control of some of the most personal information one could divulge, and Plaintiff

remains at risk of that information being used to identify him and being further disseminated to third parties.  Since Defendant cannot undue the harm that is has done by initially auctioning off Plaintiff's PII, the risk of future harm remains.

**Conclusion**

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety or in the alternative, grant Plaintiffs leave to amend or dismiss without prejudice.

Date:   August 28, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Christopher Patalano

Christopher Patalano
60 Cuttermill Rd, Ste 409
Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800
*cpatalano@spencersheehan.com*

7:20-cv-00875-KMK
United States District Court
Southern District of New York

Robert Bergeron, individually and on behalf of all others similarly situated,

Plaintiff,

-against-

Grindr, Inc.

Defendant

Plaintiff's Memorandum of Law in Opposition
to Defendant's Motion to Compel Arbitration or, Alternatively,
Motion to Dismiss the Complaint

Sheehan & Associates, P.C.
60 Cuttermill Rd, Ste 409
Great Neck, NY 11021
Tel: (516) 303-0552
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Date:   August 28, 2020

/s/Spencer Sheehan
Spencer Sheehan

**Certificate of Service**

I certify that on August 28, 2020, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ | ☐ |
| Plaintiffs' Counsel | ☒ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☐ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan